No. 54,765

PICKRELL DRILLING COMPANY, *Applicant,* v. THE STATE CORPORA-
TION COMMISSION OF KANSAS, *et al., Respondents.*

(654 P.2d 477)

Opinion filed De-
cember 3, 1982.

*Richard C. Byrd,* of Anderson, Byrd & Richeson, of Ottawa, argued the cause,
and *Walker A. Hendrix,* of the same firm, was with him on the briefs for the
applicant.

*David S. Black,* of Kansas Power & Light Company, of Topeka, argued the
cause and was on the brief for the respondent Kansas Power & Light Company.

*Brian J. Moline,* general counsel, Kansas Corporation Commission, argued the
cause and was on the brief for the respondent Kansas Corporation Commission.

*Jennifer A. Cates,* of Bartlesville, Oklahoma, was on the brief for *amicus curiae*
Phillips Petroleum Company.

The opinion of the court was delivered by

HERD, J.: This is an appeal from an order of the Kansas
Corporation Commission dismissing Pickrell Drilling Com-
pany's petition for approval of its requested natural gas price
increase.

The case began as a dispute between Pickrell Drilling Com-
pany and the Kansas Power and Light Company (KP&L) over the
construction of a price redetermination clause in a natural gas
purchase contract between the two parties and the provisions of
the Natural Gas Policy Act (NGPA), 15 U.S.C. § 3301 *et seq.*
(Supp. IV 1980) and the Kansas Natural Gas Price Protection Act

(PPA), K.S.A. 1981 Supp. 55-1401 *et seq.* These statutes will first be examined to provide a background for later discussion.

Prior to the enactment of the NGPA two separate natural gas markets had developed, an interstate market regulated by the Natural Gas Act of 1938 (15 U.S.C. § 717 *et seq.*) and an unregulated intrastate market. This bifurcated system created higher prices in the intrastate market, causing many producers to sell their product in the intrastate market. Shortages of natural gas resulted in nonproducing states. In an attempt to encourage production of new natural gas and maintain adequate supplies of natural gas in the interstate market President Carter proposed, and Congress passed, the NGPA of 1978. See *State of Okl., Etc. v. Federal Energy Reg. Com'n,* 661 F.2d 832, 834 (10th Cir. 1981). In addition to providing for phased deregulation of new natural gas, the NGPA extended price controls to the intrastate market. For our purposes the relevant portion of the Act is Title I, which establishes price ceilings for all first sales of natural gas produced in the state.

In response to § 602 (15 U.S.C. § 3432 [Supp. IV 1980]) of the NGPA the Kansas legislature adopted the PPA. Relevant portions of that act include the following statutes:

K.S.A. 1981 Supp. 55-1402(c):

" 'Indefinite price escalator clause' means any provision of a gas purchase contract which provides for the establishment or adjustment of the price of natural gas delivered under such contract by reference to other prices for natural gas, for crude oil, or for refined petroleum products."

K.S.A. 1981 Supp. 55-1404:

"Except to the extent provided in K.S.A. 1979 Supp. 55-1405 and 55-1406, on or after December 1, 1978, the price allowed to be paid pursuant to federal legislation or any regulation by an agency implementing such legislation, or the price paid or to be paid for any sale of natural gas in the state of Kansas shall not be taken into account in applying any indefinite price escalator clause contained in any gas purchase contract subject to this act, to the extent that such contract provides for the sale in the state of Kansas, of gas produced within this state which was not committed or dedicated to interstate commerce on November 8, 1978. This section shall not require a reduction of any price contained in any gas purchase contract subject to this act below the price actually paid prior to the date of enactment of this act."

K.S.A. 1981 Supp. 55-1405:

"Notwithstanding the restriction on the operation of indefinite price escalator clauses imposed by K.S.A. 1979 Supp. 55-1404, after March 1, 1979, such

indefinite price escalator clauses in gas purchase contracts subject to this act may be given effect in accordance with their terms to the extent that the price payable under such contracts is not increased above the maximum price such gas would receive if it qualified under section 109(b) of the natural gas policy act of 1978. The maximum price shall be calculated on a monthly basis. Nothing in this section shall be construed to apply to gas produced from new wells, new reservoirs or stripper wells as defined by this act."

Section 109(b) of the NGPA referred to in K.S.A. 1981 Supp. 55-1405 states:

"(1) The maximum lawful price under this section for any month shall be -
"(A) $1.45 per million Btu's, in the case of April 1977; and
"(B) in the case of any month thereafter, the maximum lawful price, per million Btu's, prescribed under this paragraph for the preceding month multiplied by the monthly equivalent of the annual inflation adjustment factor applicable for such month." 15 U.S.C. § 3319 (Supp. IV 1980).

Pickrell Drilling Company produces natural gas in the Spivey-Grabs field in Harper and Kingman counties, Kansas. On September 26, 1975, Pickrell, as seller, entered into an intrastate contract with KP&L, as buyer, for the sale and purchase of natural gas. This contract contained a "price redetermination clause" which stated: "SELLER shall have the option to cause the price being paid for its gas by BUYER to be redetermined every two years, beginning in 1977." The price was to be redetermined on the basis of "three (3) contracts under which the highest prices are actually being paid for flowing gas ninety (90) days prior to the date the redetermined price is to be effective." If the parties were not able to agree on a redetermined price, the price was to be established by a three member arbitration board. In July of 1981 Pickrell notified KP&L of a desire to redetermine the contract price to $3.149 per million btu's. This price was equal to the price allowed by section 108 of the NPGA, 15 U.S.C. § 3318 (Supp. IV 1980) and K.S.A. 1981 Supp. 55-1405. KP&L hesitated and Pickrell informed KP&L it would seek arbitration. KP&L responded in a letter dated December 1, 1981:

"We have your request for arbitration under the Spivey-Grabs contracts. Your letter of transmittal states that 'if KPL will agree that the three highest contract prices would result in a redetermined price equal to the November, 1981 Section 108 price, arbitration could be avoided.' We can agree that the redetermination process set forth in our contracts would produce a price equal to Section 108 and if the Price Protection Act permits it, such price would be the 'redetermined price.' We expect the pending Harper County litigation in *The Kansas Power and*

*Light Company v. Energy Reserves Group,* No. 81 C 13 to resolve the legal question."

On January 19, 1982, Pickrell filed a petition with the Kansas Corporation Commission (KCC) requesting:

"an order of the Commission . . . declaring that the monthly adjusted NGPA Section 109 price is the price to be paid for gas subject to K.S.A. 55-1405 where the parties have agreed that the terms of the contract provide for a redetermined price of $3.149 per MMBTU."

Essentially, then, Pickrell was asking the KCC to declare that KP&L was obligated to pay the monthly escalating § 109(b) price up to the contract price, which in this case, was equal to the § 108 price.

KP&L intervened and filed a motion to dismiss. A hearing was held on March 11, 1982, and the KCC issued its order granting KP&L's motion to dismiss on June 17, 1982. The KCC order made two major points. First, whether the PPA permits monthly escalations for natural gas sold under contracts subject to the Act depends on the terms of the particular contract. The PPA, while it requires calculation of the monthly adjustments to the NGPA Section 109(b) price, contemplates that this price might affect existing contracts, but does not mandate or require such a result except "in accordance with their terms." A monthly section 109(b) adjusted ceiling price could apply only if required by the particular contract between the parties. If the contract and parties thereto have not provided and agreed upon a monthly escalated price, the Act would not require a contrary result.

Secondly, the Commission relied on K.S.A. 1981 Supp. 55-1409 which states:

"Jurisdiction to implement and enforce the provisions of this act is hereby conferred on the commission, except that nothing in such sections of this act shall be construed to divest the district courts of Kansas of jurisdiction to determine issues relating to private contract rights. The commission may adopt such rules and regulations to implement and enforce this act, as it deems necessary and proper."

That section, the order stated, denied the Commission jurisdiction to resolve issues relating to private contract rights. Since this case involved issues of the interpretation of the contract between Pickrell and KP&L the KCC decided those issues should be determined in the district court. Pickrell's petition was thus dismissed.

Pickrell filed a motion for rehearing which was not acted on by

the KCC. Pickrell then filed an "Application for Judicial Review" pursuant to K.S.A. 1981 Supp. 55-1410. That statute gives the Supreme Court appellate jurisdiction to review orders of the KCC concerning the PPA.

In determining whether the dismissal of Pickrell's petition was proper this court's scope of review should be noted. K.S.A. 1981 Supp. 55-1410 states appeals to the Supreme Court concerning the PPA shall be taken "in the same manner and time as appeals are allowed by law to the court of appeals from orders of the commission which relate to rate hearings." K.S.A. 66-118d governs appeals from rate orders:

"Said proceedings for review shall be for the purpose of having the lawfulness or reasonableness of the original order or decision or the order or decision on rehearing inquired into and determined, and the court hearing said cause shall have the power to vacate or set aside such order or decision on the ground that such order or decision is unlawful or unreasonable. . . .

". . . The procedure upon appeal shall be the same as in other civil actions, except as herein provided. No court of this state shall have power to set aside, modify or vacate any order or decision of the commission, except as herein provided."

In *Midwest Gas Users Ass'n v. Kansas Corporation Commission*, 3 Kan. App. 2d 376, 380-81, 595 P.2d 735, *rev. denied* 226 Kan. 792 (1979), the court thoroughly discussed the scope of review under 66-118d:

"K.S.A. 1978 Supp. 66-118d limits judicial review of an order by the commission to determining whether the order is 'lawful' or 'reasonable.' [Citation omitted.] A court has no power to set aside such an order unless it finds that the commission acted unlawfully or unreasonably. [Citation omitted.] An order is 'lawful' if it is within the statutory authority of the commission, and if the prescribed statutory and procedural rules are followed in making the order. [Citation omitted.] An order is generally considered 'reasonable' if it is based on substantial competent evidence. [Citation omitted.]

"The legislature has vested the commission with wide discretion and its findings have a presumption of validity on review. [Citation omitted.] Since discretionary authority has been delegated to the commission, not to the courts, the power of review does not give the courts authority to substitute their judgment for that of the commission. [Citation omitted.] The commission's decisions involve the difficult problems of policy, accounting, economics and other special knowledge that go into fixing utility rates. It is aided by a staff of assistants with experience as statisticians, accountants and engineers, while courts have no comparable facilities for making the necessary determinations. [Citation omitted.] Hence a court may not set aside an order of the commission merely on the ground that it would have arrived at a different conclusion had it been the trier of fact. It

is only when the commission's determination is so wide of the mark as to be outside the realm of fair debate that the court may nullify it."

Substantial competent evidence under the reasonableness standard means "evidence which possesses something of substance and relevant consequence, and which furnishes a substantial basis of fact from which the issues tendered can reasonably be resolved." *Jones v. Kansas Gas and Electric Co.,* 222 Kan. 390, 397, 565 P.2d 597 (1977).

Pickrell argues the KCC's order was unreasonable because there was no evidence to support the finding there were issues remaining which related to private contract rights. In other words, Pickrell claims there was total agreement regarding the contract between Pickrell and KP&L so the provisions of K.S.A. 1981 Supp. 55-1409, which require issues concerning private rights to be determined in the district court, do not come into play.

The evidence supports the Commission's decision to dismiss Pickrell's petition. It is clear the determination of the substantive issues involves interpretation of the contract between Pickrell and KP&L. The question is whether, under a redetermination clause which would set the price of gas above the NGPA § 109(b) price, the Kansas PPA (K.S.A. 1981 Supp. 55-1401 *et seq.*) allows the seller to collect the monthly escalating § 109(b) price until it reaches the contract price. The Commission held in Docket No. 126,236-U that the PPA did not prohibit the payment of a monthly adjusted price under an indefinite price escalation, or price redetermination clause. In that same order, however, the Commission noted that if such a clause prohibited payment of the monthly escalating price then the contract terms would control. This position was reiterated in the order issued in this case.

K.S.A. 1981 Supp. 55-1405 also supports the KCC's ruling. It states that "indefinite price escalator clauses in gas purchase contracts subject to this act may be given effect in accordance with their terms  .  .  ." Thus, if the Pickrell-KP&L contract allows the collection of the monthly escalating § 109(b) price then the PPA allows it. It is possible to interpret the contract as not allowing the collection of this price, however. The redetermination clause states the price to be paid by KP&L may be redetermined every two years. It is KP&L's position this clause prohibits the price payable from escalating each month. On the other hand, Pickrell argues the contract price itself is not escalat-

ing, only the § 109(b) ceiling price increases. This demonstrates there is a dispute regarding the interpretation of the Pickrell-KP&L contract. Since K.S.A. 1981 Supp. 55-1409 reserves such issues to the district courts of this state the KCC's dismissal of Pickrell's petition was proper.

Pickrell points to KP&L's December 1, 1981, letter for its argument there was no disagreement regarding the terms of the contract. This letter only admitted that the "redetermination *process*" set out in the contract would put the price at $3.149 per million btu's. It did not answer the question of whether the contract allowed Pickrell to collect the monthly escalating § 109(b) price.

We conclude the KCC order of dismissal was correct. Its action is affirmed.