BLUE CROSS & BLUE SHIELD OF MICHIGAN v INSURANCE
COMMISSIONER

Docket No. 74647. Submitted March 14, 1984, at Lansing.—Decided
October 17, 1984.

The Insurance Commissioner issued an order disapproving of a
rating system used by Blue Cross & Blue Shield of Michigan in
setting health insurance rates of members of four association
groups. The system was based on the subscribers' ages and
areas of residence. In practice the system resulted in higher
rates for older subscribers and those living in the southeastern
Michigan metropolitan area and reduced rates for younger
subscribers and those residing outstate. BCBSM sought review
of the commissioner's order in Ingham Circuit Court, which
affirmed, Thomas L. Brown, J. BCBSM appealed, alleging that
the commissioner acted arbitrarily in disapproving the age and
area rating system in that the commissioner disregarded the
needs of BCBSM subscribers, improperly placed BCBSM at a
competitive disadvantage with respect to commercial insurers,
and utilized erroneous standards in disapproving the rates.
*Held:*

1. The Insurance Commissioner has the authority to disap-
prove rates set by BCBSM where the rates are not "fair and
reasonable".

2. The rates incorporating age and area were subject to prior
approval by the commissioner, which approval was not sought
by BCBSM.

3. The fact that the overall rate paid by a group did not
change is not determinative. Each subscriber is entitled to rates
which are fair and equitable.

4. BCBSM did not present evidence sufficient to establish that
the rating system adopted was fair and reasonable. Further,
the evidence presented by BCBSM did not indicate that any
substantial effort had been made to limit the damaging effects
of the rate structure on some subscribers.

5. The expressed wishes of the leadership of the associations

REFERENCES FOR POINTS IN HEADNOTES
[1] 43 Am Jur 2d, Insurance §§ 11, 30.
[2] 43 Am Jur 2d, Insurance § 31.

in question in favor of some form of age and area rating are a factor to be considered but are not determinative. The commissioner properly considered those wishes.

6. The commissioner did not arbitrarily and capriciously place BCBSM at a competitive disadvantage with respect to commercial health insurance carriers. BCBSM does not operate on the same principles as govern commercial insurers, but rather operates under statutes which give it a significant advantage over its competitors in many respects. Under the circumstances it is neither fair nor reasonable to allow BCBSM to adopt any rate structure such as that utilized by those competitors.

7. The principle that rates incorporating a subsidy between classes of ratepayers are unfair and unreasonable, used in public utility cases, does not apply to rates charged by BCBSM.

Affirmed.

1. INSURANCE — RATES — BLUE CROSS & BLUE SHIELD.

The Commissioner of Insurance may disapprove rates proposed to be charged by Blue Cross & Blue Shield of Michigan unless the rates to be charged and the benefits to be provided are fair and reasonable.

2. INSURANCE — RATES — CLASSES OF RATEPAYERS.

A principle of public utility rate cases, that rates incorporating a subsidy between classes of ratepayers are unfair and unreasonable, does not apply to cases involving rates charged by a nonprofit health insurance corporation.

*Foster, Swift, Collins & Coey* (by *William K. Fahey),* for plaintiff.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Deborah K. Canja,* Assistant Attorney General, for defendant.

Before: SHEPHERD, P.J., and ALLEN and A. E. KEYES,* JJ.

PER CURIAM. This is an appeal from an order of the Ingham County Circuit Court affirming an order of the Insurance Commissioner. The commis-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

sioner disapproved an age- and area-rating system used by plaintiff for some of its association group business.

A brief recitation of the history behind this case is necessary to understand the issues involved. When Blue Cross & Blue Shield of Michigan began doing business, the same rate was charged for all members of the community who wanted coverage. This was community rating. In more recent years, "community rating" has been abandoned in favor of experience rating. For experience rating, the community is divided into groups. The most common type of group consists of the employees (and dependents) of a single large employer. Other types are pools of small employee groups and associational groups.

The commissioner's order affects the health insurance rates offered by BCBSM to members of four associations: Michigan Farm Bureau, Michigan Dental Association, Metro Realtors, and the "legal professional group".[1] Those who qualify as members of these groups can, if they wish, obtain coverage from BCBSM under the auspices of the group.

Experience-rated groups pay rates based on BCBSM's experience in paying benefits on behalf of members in prior years. A group with a high rate of utilization of benefits pays high rates and *vice versa.* Age- and area-rating provide for differences in rates among individual members of groups. Rates vary depending on a subscriber's age and region of residence. In practice, rates went up for older subscribers and those living in the southeastern Michigan metropolitan area. Age- and

---

[1] The "legal professional group" was composed of members of the group which had previously been offered Blue Cross coverage under the auspices of the State Bar of Michigan. The offering was made after the State Bar withdrew its endorsement from BCBSM in favor of a commercial carrier.

area-rating results in relatively reduced rates for younger and outstate subscribers.

The Insurance Commissioner's authority to regulate BCBSM stems from BCBSM's operation under special statutes governing non-profit medical care and hospital care corporations. The present statutory scheme regulating BCBSM is explained in footnote 3 of Justice LEVIN's concurring opinion in *Westland Convalescent Center v BCBSM,* 414 Mich 247, 274; 324 NW2d 851 (1982). Both parties agree that the commissioner may disapprove rates offered by BCBSM unless "the rates to be charged and the benefits to be provided are fair and reasonable". The statutory basis for the exercise of the commissioner's rate-reviewing authority was set forth by the Supreme Court in *BCBSM v Ins Comm'r,* 403 Mich 399; 270 NW2d 845 (1978):

"The section of the enabling legislation which grants the Commissioner continuing rate approval authority, MCL 550.503; MSA 24.623, applies only to hospital services and does not state what standards are to guide the Commissioner in exercising that authority. It only provides that '[t]he rates charged to the subscribers for hospital service, and the rates of payment of the corporation to the contracting hospitals * * * are subject to the approval of the commissioner of insurance'. However, the section which sets forth the Commissioner's authority prior to issuing a certificate of authority to do business, MCL 550.305; MSA 24.595, provides guidance as to the proper standard. That section states that prior to issuing the certificate, the Commissioner must be satisfied that 'the rates to be charged * * * are *fair and reasonable'.* (Emphasis added.) No other section of the enabling legislation speaks of a standard for exercise of the Commissioner's continuing rate approval authority. In addition, there is no indication in the legislation that some different standard is to guide the Commissioner after issuing the certificate of authority. It is logical to assume therefore that the Legislature intended the standard of 'fair and reasonable' rates to apply both

before issuance of the certificate and upon the statutorily provided continuation of rate-setting authority." *BCBSM,* pp 428-429.

To disapprove a proposed rate to be charged to a subscriber, the commissioner must determine that the rate is unfair or unreasonable.

On appeal, BCBSM claims that the commissioner acted arbitrarily in disapproving age- and area-rating and that the affirmance of her decision by the circuit judge was error. It claims that her decision disregarded the needs of BCBSM subscribers, that she improperly placed BCBSM at a competitive disadvantage with respect to its commerical competitors, and that the commissioner utilized erroneous standards in disapproving the rates.

BCBSM presented testimony indicating that the market for health insurance among members of associational groups was guided by the same principles as that for individuals, in that consumers have choices dependent upon their individual characteristics. If an associational group plan is priced without regard to the consumer's age or residence, the risk is posed that individuals who are members of classes posing lower risks *(e.g.,* young, non-metro) will seek insurance incorporating age- and area-rating from commerical competitors of BCBSM. Such individuals might also choose to go without coverage. The failure to provide rate relief to these individuals may result in a group's loss of its members who pose the lowest risks. When significant numbers of "low-risk individuals" leave an experience-rated insurance group, the rates for the group soar. BCBSM established that rates for its associational group business had increased even faster than the staggering rate of increase of health care costs generally. BCBSM termed this

the "anti-selection spiral" and presented evidence that it had already substantially affected rates available to members of associational groups. The associations in question had requested age- and area-rating systems to be incorporated into the rate structures offered to their members.

In her opinion disapproving the proposed rates, the commissioner stated that BCBSM failed to prove that the impact on subscribers and on the general public of the use of age- and area-rating factors was not adverse and failed to present sufficient evidence that the use of such factors was beneficial rather than harmful to subscribers and the general public. She also held that BCBSM failed to establish that the use of such factors was appropriate. She stated that its failure to obtain prior approval for the use of these rating factors was itself a sufficient reason for withholding approval. Finally, she held that the evidence opposing the use of age- and area-rating factors established that it would be harmful to approve the use of such factors at this time. In all respects relevant to this appeal, the circuit court affirmed the decision of the commissioner.

To a large extent, the commissioner's use of generalities to explain the reasons for her decision handicaps effective judicial review. In particular, she failed to address the problem posed by the "anti-selection spiral" and failed to explain why age- and area-rating were, in general, either unfair or unreasonable.

We nonetheless affirm the decision of the trial court and that of the commissioner based on those findings which are explained in her opinion. She clearly held that several independently sufficient reasons existed for disapproving the rates.

The first was BCBSM's use of the rates without seeking the prior approval of the commissioner.

We reject BCBSM's entirely unwarranted claim that its proposed rates incorporating age- and area-rating were not subject to prior approval by the commissioner. BCBSM's argument that no rates were changed when it changed rates to individuals within a group which, in the aggregate, paid the same amount as before is without merit. Each subscriber is entitled to rates which are fair and reasonable. Aggregate rates are not determinative where the rates are charged to individuals.

We also agree that the evidence presented by BCBSM, while perhaps adequate to establish the desirability of some type of age- and area-rating system, did not establish that the system adopted was fair and reasonable. The testimony of BCBSM officials indicated that age and area factors were used which fully reflected the claims experience of groups divided by age and region of residence. No testimony was presented, however, indicating that changes of that magnitude were required in order to combat the "anti-selection spiral" effectively. No evidence was presented indicating the degree to which rates must reflect the lower claims experience of young, non-metro individuals in order to induce those individuals to remain within an associational group. Other evidence presented at the hearing suggested strongly that BCBSM had substantial advantages over commercial competitors, both in price and in quality of service. BCBSM has not shown that it cannot use these advantages to offer commercially reasonable rates to members of low-risk groups while retaining many of the benefits of risk-sharing which inhered in the community-rating concept.

At the hearing on age- and area-rating, the commissioner also indicated several of her concerns which were not satisfied by the evidence presented by BCBSM. BCBSM failed to show that

its discrimination among subscribers based on age and location of residence was designed with fairness, and not expediency, in mind. To the extent that age- and area-rating is required to attract subscribers who are members of relatively low-risk classes, the commissioner may insist that the resulting rates should be as fair as possible. The evidence presented by BCBSM did not indicate that any substantial effort was made to limit the damaging effects of a rate structure incorporating age- and area-rating.

BCBSM argues that the commissioner's decision was arbitrary and capricious, because it incorporated age- and area-rating into its rates for members of associational groups only after requests made by those associations. Although we find that the wishes of the leadership in the associations in question are important factors to consider, they are not determinative. Following the will of the majority does not necessarily protect the rights of a minority. Although no evidence indicated oppression within the associations in question, such oppression could preclude rates desired by the majority of a group from being fair and reasonable. In the present case, we view the expressed wishes of the leadership of the associations in question as strong evidence of the desirability (for all) of some means of incorporating age- and area-rating into health insurance rates. We agree with BCBSM that the commissioner must consider the needs of the majority of the members of the associations in question. We hold, however, that she did not entirely ignore the wishes of group members. Her failure to give much weight to their wishes does not undermine the adequacy of the reasons we have found supporting her decision.

BCBSM also claims that the commissioner acted arbitrarily and capriciously by placing it at a

competitive disadvantage with respect to commercial health insurance carriers. We find no merit in this argument. Although BCBSM operates according to principles similar to those of insurance companies, it is not carried on as an insurance business, but rather provides a method for promoting the public health and welfare in assisting persons to budget health care costs. *BCBSM v Ins Comm'r*, 403 Mich 399, 418; 270 NW2d 845 (1978). These principles are quite different from those governing commercial insurers. It is neither fair nor reasonable to insist that BCBSM be allowed to adopt any rate structure used by its competitors when BCBSM operates under statutes which give it extremely significant advantages over its competitors in many respects.

BCBSM argues that the commissioner must judge its rates in relation to the benefits provided to individual subscribers in determining if the rates are fair and reasonable. The most important consideration, according to BCBSM, is whether subscribers are receiving fair and reasonable value. It claims that where it pays out more in benefits on behalf of one class of subscribers than on behalf of another, the latter class is entitled to lower rates for coverage. We find this argument to be flawed. The rates challenged by the commissioner are not paid by classes of subscribers, but by individual subscribers. The impact of age- and area-rating on an individual subscriber may be unfair and unreasonable, despite its reasonableness when applied to a class of subscribers to which the individual belongs. As the commissioner noted, factors other than age and location of residence may be significantly related to benefits paid on an individual's behalf. Discrimination by age and location of residence will necessarily produce imperfect predictions of utilization of health care

benefits when applied to any individual. For certain individuals, discrimination by age and location of residence in predicting costs of coverage may be unfair and unreasonable. These individuals are entitled to the commissioner's protection.

BCBSM relies on the principle that each class of customers must pay its own way, and that rates incorporating a subsidy between classes are unfair and unreasonable. See *El Paso Electric Co v Federal Energy Regulatory Comm,* 667 F2d 462, 468 (CA 5, 1982); *Jones v Kansas Gas & Electric Co,* 222 Kan 390; 565 P2d 597 (1977); *Jager v State,* 537 P2d 1100, 1109-1110 (Alaska, 1975). This principle, drawn from public utility rate cases, has also been applied to Blue Cross rates. *Blue Cross of Kansas, Inc v Bell,* 227 Kan 426; 607 P2d 498 (1980). We disagree with the application of this principle to cases involving Blue Cross rates. In the case of most public utility rates, what a customer pays is dependent upon what he uses. The business of insurance, on the other hand, necessarily involves a far more imperfect assessment of the cost of benefits provided. Where no element of risk-sharing is involved, it is much easier to conclude that subsidies between classes of customers are unfair.

While we affirm the commissioner's decision in this case, it is not without some reservations. It may not be enough for the commissioner to declare that there is insufficient evidence to show that a rate is fair and reasonable, without specifying what types of evidence are required to make this showing. Where the commissioner's opinion consists only of conclusory statements, she risks a reviewing court's conclusion that she has merely substituted her judgment for that of BCBSM's board of directors. She is not given the authority to do so by statute or otherwise. She may only

disapprove those rates which are unfair or unreasonable.

The commissioner alleges that, subsequent to the filing of the appeal in this case, BCBSM caused to be transferred coverage of Farm Bureau and Bar Association members to a foreign insurance company (not regulated under the Blue Cross act) created by the National Blue Cross and Blue Shield Association. The commissioner moved in this Court for "a protective order" precluding BCBSM from carrying out these agreements. These motions presented substantial issues of law which were not merely incident to the decision to be made on appeal. These issues are not, therefore, properly a part of the decision on appeal. The commissioner should attempt to raise these issues in the trial court or should file an original action seeking the relief sought in the motions. Since the questions of which forum is most appropriate to address these issues and which remedies are required under the circumstances are not properly before us, we decline to address them.

Affirmed. No costs, a public question being involved.