

1999 Decisions

6-25-1999

# Aronson v. Peoples Nat Gas Co

Precedential or Non-Precedential:

Docket 99-3000

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1999

Recommended Citation

"Aronson v. Peoples Nat Gas Co" (1999). *1999 Decisions.* Paper 165.
http://digitalcommons.law.villanova.edu/thirdcircuit_1999/165

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 1999 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed June 25, 1999

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 99-3000

MARK B. ARONSON,
on behalf of himself and all others similarly situated,
        Appellant

v.

THE PEOPLES NATURAL GAS COMPANY

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 98-cv-00705)
District Judge: Hon. Donald E. Ziegler

Submitted Under Third Circuit LAR 34.1(a)
June 8, 1999

Before: SLOVITER and MANSMANN, Circuit Judges
and O'NEILL,* District Judge

(Filed June 25, 1999)

        William F. Askin
        Pittsburgh, PA 15220

         Attorney for Appellant

        Joyce C. Dailey
        The Peoples Natural Gas Company
        Pittsburgh, PA 15222

         Attorney for Appellee
_____

*Hon. Thomas N. O'Neill, Jr., United States District Judge for the
Eastern District of Pennsylvania, sitting by designation.

James A. Michaels
Washington, D.C. 20551

Attorney for Board of Governors of
the Federal Reserve System as
Amicus Curiae

OPINION OF THE COURT

SLOVITER, Circuit Judge.

Plaintiff Mark B. Aronson appeals from the order of the
District Court granting summary judgment in favor of
Peoples Natural Gas Co. ("Peoples Gas") on Aronson's claim
that the billing practices of Peoples Gas violate the Truth in
Lending Act ("TILA"), 15 U.S.C.  1601 et seq. The District
Court remanded to the state court two other claims
Aronson brought against Peoples Gas, one for fraud and
misrepresentation and the other for violation of the
Pennsylvania Unfair Trade Practices and Consumer
Protection Law (the "Pennsylvania Act"), 73 Pa. Cons. Stat.
Ann.  201-1 et seq. Aronson has not sought to appeal the
remand ruling. We therefore limit our consideration to the
dismissal of the TILA claim, which raises an issue of first
impression for this court.

I.

Aronson is a customer of Peoples Gas and has purchased
utility services for his Allegheny County home since 1970.
His August 21, 1997, utility bill included new charges of
$16.24 and an accumulated balance of $541.12 for a total
account balance of $557.36. The bill stated, "Please Pay By
Sep 11, 1997 To Avoid A Late Payment Charge of $6.57
(1.5%)." It also listed an optional payment amount of
$113.00. Aronson's September 23 bill updated thesefigures
to show an unpaid accumulated balance of $557.36, a late
payment charge of $6.57, and new charges of $22.51, for a
new account balance totaling $586.44. That bill stated,
"Please Pay By Oct 14, 1997, To Avoid A Late Payment
Charge of $6.91 (1.5%)," and listed an optional payment
amount of $206.57. On October 3, Peoples Gas issued a

2

ten-day turn-off notice which stated the company would turn the gas service off if Aronson failed to pay the total amount of $557.36 by October 16.

Aronson initially filed a complaint with the Pennsylvania Public Utility Commission ("PUC") on October 10, 1997, complaining of Peoples Gas's billing practices. 1 Prior to a final decision from the PUC, Aronson filed a substantially similar complaint in the Court of Common Pleas for Allegheny County in March 1998, and sought class certification. That complaint alleges that billing practices of Peoples Gas violate TILA because the bills do not contain a "due date," reveal the annual interest rate corresponding to the late payment charge, or explain how the 1.5% late payment charge is calculated. The bills refer only to "the amount you owe," without specifying whether that amount is the total balance, the current charges, or the optional payment amount.

The complaint also alleges that the utility's billing practices deviate materially from the tariff Peoples Gas filed with the PUC, violate the Pennsylvania Act, perpetrate common law fraud, and contain fraudulent misrepresentations.

Peoples Gas removed the action to the United States District Court for the Western District of Pennsylvania pursuant to 28 U.S.C.  1441. It is the position of Peoples Gas that the "Please Pay By" a specified date statement of the bill is in fact a due date, although written in courteous and customer-friendly language; that the bills inform customers both how the late payment fee is computed and how to avoid it; and that Peoples Gas never acted on the ten-day turn-off notice. Shortly after Peoples Gasfiled its answer, the District Court referred the matter to the Magistrate Judge for pretrial proceedings.

After some activity, Peoples Gas moved for summary
_____

1. The administrative law judge at the PUC ultimately dismissed the complaint in July 1998 for lack of jurisdiction over the TILA claim and for failure to carry the burden of proof as to the other claims. After considering Aronson's exceptions, the PUC unanimously rejected the exceptions on March 31, 1999.

judgment, asserting that "Regulation Z," promulgated by the Board of Governors of the Federal Reserve System ("Board"), exempted utility billing from TILA's requirements. See 12 C.F.R. 226.3(c). Aronson's verified response, see Fed. R. Civ. P. 56(e), emphasized, inter alia, that the Board had neither determined that a state regulatory body (here, the PUC) regulates the charges at issue, nor specifically exempted Peoples Gas. He attached a letter from a Board attorney stating that "the Federal Reserve's regulations do not apply to . . . public utility companies," App. at 58, which Aronson concluded meant that "Defendant as a public utility is exempt from Regulation Z." App. at 57.

The Magistrate Judge filed a Report and Recommendation recommending the grant of summary judgment for Peoples Gas on Aronson's TILA claim. The Magistrate Judge reasoned first that the fact that Peoples Gas files its tariff with the PUC pursuant to state law establishes that a state regulatory body indeed does regulate the tariff of Peoples Gas. The Magistrate Judge recommended that the two state law claims (for common law fraud and misrepresentation and violation of the Pennsylvania Act) be remanded under 28 U.S.C. 1367(c)(3), rather than dismissed, because these claims involve complex issues of state law that would be better left to resolution by a state court. Aronson filed objections to the Magistrate Judge's Report and Recommendations, but the District Court adopted the Report and Recommendations without change. Because of their decisions, neither the Magistrate Judge nor the District Judge reached the class action issue.

Aronson filed a timely notice of appeal. After receiving the briefs of the parties, we invited the Board to file a brief amicus curiae, as the propriety and interpretation of its regulation are at issue, and it has obliged us with its brief. We have jurisdiction pursuant to 28 U.S.C. 1291. We engage in plenary review of a district court's grant of summary judgment and consider the facts in the light most favorable to the non-movant. Seitzinger v. Reading Hosp. and Med. Ctr., 165 F.3d 236, 238 (3d Cir. 1999).

II.

Aronson raises three issues on appeal. First, he claims that the Board exceeded its authority under TILA by creating a blanket exemption for public utilities; instead, he claims, the Board was required to make an individual determination whether the state in fact regulated the utility's tariffs. Second, Aronson contends that the District Court erred in holding that the Board had authority to issue a regulation exempting public utilities, such as Peoples Gas, "upon the mere filing of tariffs without proof of state regulatory control." Finally, Aronson contests the ruling that his testimony and documents were not admissible on summary judgment.

Congress enacted TILA to promote "the informed use of credit," by assuring consumers "meaningful disclosure of credit terms." Ford Motor Credit Co. v. Milhollin, 444 U.S. 555, 559 (1980) (quoting 15 U.S.C. 1601). The statute requires that the lenders specify, inter alia, the finance charge and the annual percentage rate. See 15 U.S.C. 1605, 1606, 1638(a)(3),(4). This disclosure enables consumers to have the knowledge necessary to compare credit terms offered by competing lenders. Congress authorized the Federal Reserve Board to prescribe regulations to carry out the purpose of TILA. See 15 U.S.C. 1604(a).

A provision of TILA exempts public utility charges as follows:

> 1603. Exempted transactions
>
> This subchapter does not apply to the following:
>
> . . . .
>
> (4) Transactions under public utility tariffs, if the Board determines that a State regulatory body regulates the charges for the public utility services involved, the charges for delayed payment, and any discount allowed for early payment.

15 U.S.C.A. 1603.

Pursuant to its authority under TILA, the Board in turn promulgated Regulation Z. One of those regulations provides as follows:

5

226.3 Exempt transactions.

This regulation does not apply to the following:

. . . .

(c) Public utility credit. An extension of credit that involves public utility services provided through pipe, wire, other connected facilities, or radio or similar transmission (including extensions of such facilities), if the charges for service, delayed payment, or any discounts for prompt payment are filed with or regulated by any government unit. The financing of durable goods or home improvements by a public utility is not exempt.

12 C.F.R.  226.3 (footnote omitted).

Aronson argues that the statutory language of TILA does not authorize the Board to make a blanket exemption for public utilities. He does not argue that the charges about which he complains are different than "the charges for delayed payments" referred to in the TILA exemption provision covered by  1603. Instead, he focuses on the statutory language that exempts a public utility's charges for delayed payment from TILA "if the Board determines that a State regulatory body regulates the charges for the public utility services involved." He argues that the Board must make an affirmative individualized determination that a state regulates the particular utility before that utility's charges become exempt from TILA. Aronson contends that in the absence of a factual finding that Pennsylvania does regulate Peoples Gas, the regulation's blanket exemption is arbitrary. Moreover, he contends that the regulation is arbitrary because it is not reasonably related to TILA.

In arguing that the Board is required to make a determination of state regulation in each instance in which a utility claims exemption from a provision of TILA, Aronson in effect challenges the Board's authority to promulgate the provision of Regulation Z which broadly exempts utility charges that are "filed with or regulated by any government unit." We need look no further than the Supreme Court's opinion in Ford Motor Credit Co. for a discussion of the extent of the Board's authority under TILA and an explanation of its broad scope.

6

In that case, the Court stated that, because the complexity and variety of credit transactions covered by TILA "defy exhaustive regulation by a single statute[,] Congress . . . delegated expansive authority to the Federal Reserve Board to elaborate and expand the legal framework governing commerce in credit." Ford Motor Credit Co., 444 U.S. at 559-60 (emphasis added). The Court then noted that "[t]he Board executed its responsibility by promulgating Regulation Z, 12 C.F.R. Part 226 (1979), which at least partly fills the statutory gaps." Id. at 560. Later in the opinion, the Court stated, "Congress delegated broad administrative lawmaking power to the Federal Reserve Board when it framed TILA. . . . Furthermore, Congress has specifically designated the Federal Reserve Board and staff as the primary source for interpretation and application of truth-in-lending law." Id. at 566 (footnote omitted).

The Board construes its broad power under TILA as permitting it to implement the exception either by a uniform rule or case by case. It opted for the former method by adopting the regulation that exempts certain utility credit transactions from TILA whenever "the charges . . . are filed with or regulated by any government unit." 12 C.F.R. 226.3(c). As the Board's staff noted in a published position letter, "It was the Board's intention that this provision [in 226.3] embody an objective test, against which all public utility transactions could be measured to determine whether they are subject to the Truth-in-Lending Act, without the Board having to make an individual determination in each case." Federal Reserve Staff Position Letter No. 524 (Sept. 13, 1971).

The Supreme Court considered the effect of a staff memorandum in Ford Motor Credit, and commented:

> To be sure, the administrative interpretations proffered in this case were issued by the Federal Reserve staff rather than the Board. But to the extent that deference to administrative views is bottomed on respect for agency expertise, it is unrealistic to draw a radical distinction between opinions issued under the imprimatur of the Board and those submitted as official staff memoranda. See FRB Public Information

7

Letter No. 444, [1969-1974 Transfer Binder] CCH
Consumer Credit Guide  30,640. At any rate, it is
unnecessary to explore the Board/staff difference at
length, because Congress has conferred special status
upon official staff interpretations. See 15 U.S.C.
 1640(f); 12 CFR  226.1(d)(1979).

444 U.S. at 566 n.9.

Moreover, it stated that "deference is especially
appropriate in the process of interpreting the Truth in
Lending Act and Regulation Z. Unless demonstrably
irrational, Federal Reserve Board staff opinions construing
the Act or Regulation should be dispositive. . . ." Id. at 565.

We cannot conclude that the Board's or its staff 's
understanding of the statute or its authority is
"demonstrably irrational." Therefore, we will defer to the
Board's interpretation, and conclude that TILA does not
require the Board to make a fact-specific determination in
every exemption case.

In light of this conclusion, Aronson's arguments based on
the lack of any evidence that Peoples Gas made an
individualized request for exemption are beside the point.
No determination was necessary, so no request was
required. It follows that the admissibility of the material
that Aronson sought to introduce consisting of his
verification in opposition to summary judgment, which was
addressed to the Board's exemption of utility charges, was
irrelevant.2 Moreover, we note that the courts that have
_____

2. The trial court rejected the verification because it failed to set forth
facts demonstrating Aronson's personal knowledge and competence to
testify regarding the subject matter discussed and because portions of it
constituted hearsay. Rule 56(e) requires that affidavits shall be made on
personal knowledge, set forth facts as would be admissible in evidence,
and show affirmatively that the affiant is competent to testify as to the
matters stated. Aronson contends that he has personal knowledge
resulting from his conversations with others about whether Peoples Gas
requested an exemption from the Board, whether the Board has
exempted Peoples Gas, and whether Pennsylvania itself requested an
exemption. We cannot conclude that the District Court abused its
discretion in finding that Aronson's verification failed to meet this
standard. Therefore, the District Court did not err in rejecting the
verification for the reasons given. See, e.g., Hollander v. American
Cyanamid Co., 172 F.3d 192, 198 (2d Cir. 1999).

considered arguments like Aronson's regarding late payment assessments under TILA unequivocally have

rejected them. See Ferguson v. Electric Power Bd. of Chattanooga, 378 F. Supp. 787, 790 (E.D. Tenn. 1974) ("Acting pursuant to 15 U.S.C.   1604, the Federal Reserve Board has specifically exempted late charges in public utility bills from the disclosure provisions of the Act."), aff'd, 511 F.2d 1403 (6th Cir. 1975); Grein v. Hawkins, 295 So. 2d 219, 223 (La. Ct. App. 1974) (refusing to read TILA "restrictive[ly]" to require "positive action" by Board before exemption under   1603(4) is effective). We therefore reject Aronson's contention that the regulation is arbitrary and inapplicable here.

We also reject Aronson's claim that the Board exceeded its authority in promulgating the regulation that exempts a utility's charges for service if they are "filed with . . . any government unit." Under the Board's expansive authority to implement TILA, it reasonably could interpret the reference of   1603(4) to charges that are "regulate[d]" to include charges that are "filed with" state authorities.

In any event, it is clear that Pennsylvania both requires a utility to file its tariff and regulates utility rates. See 66 Pa. Cons. Stat. Ann.   1301 et seq. There is also no question that Peoples Gas has filed the necessary tariffs with the Pennsylvania PUC and is regulated under Pennsylvania law. Therefore, we cannot conclude that application of TILA and Regulation Z to exempt Peoples Gas was inappropriate in this case.

III.

For the reasons stated above, we conclude that the District Court did not err in granting the motion of Peoples Gas for summary judgment.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit

9