760 S.E.2d 502

**Roger F. HOLT, Plaintiff Below, Petitioner**

v.

**WEST VIRGINIA–AMERICAN WATER COMPANY, Defendant Below, Respondent.**

**No. 13–0744.**

Supreme Court of Appeals of West Virginia.

Submitted April 8, 2014.

Decided June 11, 2014.

John H. Tinney, Esq., Wesley M. Jarrell II, Esq., The Tinney Law Firm PLLC, Charleston, WV, for Petitioner.

John Philip Melick, Esq., Ryan J. Aaron, Esq., Jackson Kelly PLLC, Charleston, WV, for Respondent.

PER CURIAM:

This case is before the Court on appeal by the petitioner, Roger F. Holt, of the June 24, 2013, order of the Circuit Court of Kanawha County dismissing his complaint against the respondent, West Virginia–American Water Company ("WVAW"). The circuit court determined that Mr. Holt's claims for damages and penalties, which he brought pursuant to the West Virginia Consumer Credit and Protection Act ("WVCCPA"), W. Va.Code § 46A–1–101 et seq., arose from transactions encompassed by W. Va.Code § 46A–1–105(a)(3) (2000), which precludes Mr. Holt's WVCCPA claims. After a thorough review of the record presented for consideration, the briefs, the legal authorities cited, and the arguments of parties, we find that the circuit court did not commit reversible error. Therefore, we affirm the circuit court's order.

## I. Factual and Procedural Background

In December 2009, Mr. Holt received his residential water bill from WVAW, charging him $5,136.96. Believing the bill was in error—Mr. Holt asserts that his customary monthly bill ranged from $21.00 to $30.00—he contacted both WVAW and the Public Service Commission ("PSC" or "Commission") to inquire about the charge. The PSC then inspected Mr. Holt's water line and concluded that the overcharge likely resulted from a problem with Mr. Holt's water meter. WVAW subsequently determined that the meter box was leaking, and in January 2010, WVAW repaired the meter box.[1] WVAW did not inform Mr. Holt of the repair, and it did not adjust Mr. Holt's account to eliminate the overcharge on his December 2009 bill. Instead, WVAW continued to seek payment for the full amount of the $5,136.96 bill.

On April 15, 2010, Mr. Holt filed a formal complaint with the PSC against WVAW. The PSC issued an order on April 19, 2010, granting interim relief requested by Mr. Holt. The order

directed that, pending the final resolution of this formal complaint proceeding [WVAW] not terminate water service to Complainant [Mr. Holt] and continue to provide water service to the complainant, provided that the Complainant pays his bills for current water service on or before the due dates stated on each billing while this case is pending.

WVAW accepted responsibility for the overcharge due to the leaking meter, and on May 13, 2010, WVAW credited $5,110.64 to Mr. Holt's account. In May, WVAW also informed Mr. Holt that a second leak existed, which it believed was on Mr. Holt's side of the water line. Mr. Holt repaired the line on June 11, 2010,[2] but WVAW refused to credit charges associated with the second leak, approximately $250.00 per month from January 2010 to June 2010, because under WVAW's leak adjustment policy, Mr. Holt was required to replace his entire water line in order to receive a credit for the leak. Upon the discovery of a third leak, Mr. Holt contracted in June 2010 to replace the water line. Because of problems associated with

1. Pursuant to Rules for the Government of Water Utilities, W. Va.Code R. § 150–7–1 et seq., the utility—herein WVAW—is required to maintain and operate water meters. W. Va.Code R. § 150–7–3.1 (2003) ("Unless otherwise authorized by the Commission, each utility shall provide and install at its own expense ... and shall continue to own, maintain, and operate all equipment necessary for the regulation and measurement of water, in accordance with tariff or contract provisions, to its customers.").

2. Pursuant to W. Va.Code R. § 150–7–5.3.h (2003), "[a] customer must maintain his service pipe in good condition and free from all leaks and defects, at the customer's cost and expense."

acquiring an excavator, the line replacement was not completed until November 2010.

Between December 2009 and November 2010, WVAW billed Mr. Holt for his regular water usage and for the water flow occasioned by the leaks. During that time, Mr. Holt paid only for his regular usage, between $26.00 and $30.00. Each time Mr. Holt did not pay his bill in full, WVAW assessed a 10% late penalty to his account. Each month, the previous month's penalty was added to the total bill, resulting in a progressive increase of the monthly penalty imposed. Mr. Holt also received termination notices from WVAW, and in October 2010, Mr. Holt's service was terminated for nonpayment of the disputed charges. However, service was restored the following day. At the request of PSC staff, WVAW credited Mr. Holt's account for the second leak on October 29, 2010, in the amount of $1,643.12.

On November 30, 2010, an administrative law judge ("ALJ") assigned by the PSC heard testimony and received evidence from Mr. Holt and WVAW regarding the billing dispute. By order of March 3, 2011, the PSC adopted the ALJ's recommended decision, finding that WVAW had

> arbitrarily adopted a leak adjustment policy which is contrary to and unsupported

by the Commission's *Water Rules* [W. Va. Code R. § 150–7–1 *et seq.*]. The Commission's *Water Rules* do not require leak adjustments to be limited to a two-month time period or to be limited to a one-time adjustment.

The PSC ordered that Mr. Holt be given a leak adjustment for billing between June 2010 and November 2010, and that Mr. Holt's account be adjusted for any inappropriate late penalty charges between December 2009 and November 2010. Although Mr. Holt requested damages in the amount of $1,885.48, which represented the amount he expended in labor and materials to replace his water line, the PSC concluded that it did not have jurisdiction to award the monetary damages sought.

On April 4, 2013, Mr. Holt filed a complaint against WVAW in the Circuit Court of Kanawha County seeking damages and penalties for alleged violations of the WVCCPA, specifically violations of W. Va.Code § 46A–6–104 (1974),[3] arising from WVAW's business policies and practices regarding leaks in Mr. Holt's water line.[4] Mr. Holt also sought attorney fees and costs. WVAW filed a motion to dismiss the action pursuant to Rule 12(b)(6) of the West Virginia Rules of Civil Procedure ("Rule 12(b)(6)"),[5] arguing that

---

**3.** W. Va.Code § 46A–6–104 states, "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." W. Va. Code § 46A–6–102(7) (2005) provides a nonexclusive list of sixteen acts or practices that constitute "unfair methods of competition and unfair or deceptive acts or practices."

**4.** Mr. Holt alleges in his complaint that WVAW engaged in the following unfair or deceptive acts or practices:

a. Failing to notify Plaintiff that it was responsible for the first, large leak until after Plaintiff was forced to file a formal complaint with the PSC.

b. Continuing to demand payment for the first, large leak after determining that it was responsible for the leak.

c. Forcing Plaintiff to file a formal complaint with the PSC in order to obtain the relief he had originally requested regarding the first, large leak and to which he was entitled according to [WVAW]'s own assessment.

d. Assessing late penalties against Plaintiff's account for nonpayment of charges derived from the first, large leak in January 2010, February 2010, March 2010, and pendency of

Plaintiff's April 15, 2010 PSC complaint in May 2010, June 2010, July 2010, August 2010, September 2010, October 2010, and November 2010, with each assessment constituting a discrete violation.

f. Applying a leak adjustment policy against Plaintiff that, according to the PSC, was "unreasonable," "arbitrarily adopted," and "contrary to and unsupported by the Commission's *Water Rules*." [Citation to exhibit omitted.]

g. Threatening to terminate Plaintiff's water service in violation of the PSC's April 19, 2010 Order Granting Interim Relief via letters dated October 4, 2010 and October 15, 2010, with each letter constituting a discrete violation.

h. Terminating Plaintiff's water service in violation of the PSC's April 19, 2010 Order Granting Interim Relief.

**5.** Rule 12(b) states, in pertinent part:

Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the plead-

the express terms of W. Va.Code § 46A–1–105(a)(3) [6] exempt WVAW's transactions under its public utility tariff from the WVCCPA and that Mr. Holt's claims arise from those transactions. WVAW further argued that the complaint did not allege any conduct of WVAW that would constitute an "unfair or deceptive" act or practice under the WVCCPA.

The circuit court held a hearing on the motion to dismiss on May 30, 2013. On June 24, 2013, the circuit court entered an order granting WVAW's motion to dismiss. In that order, the court found, "Mr. Holt's pled claims arise from transactions encompassed by W. Va.Code § 46A–1–105(a)(3), and thus are statutorily excluded from the WVCCPA." The court ordered that the case be dismissed. Mr. Holt appeals that order to this Court.

## II. Standard of Review

 This is an appeal of the circuit court's order granting WVAW's Rule 12(b)(6) motion to dismiss.

This Court's review of a circuit court's dismissal of a complaint pursuant to Rule 12(b)(6) is plenary. In other words, "[a]ppellate review of a circuit court's order granting a motion to dismiss a complaint is *de novo.*" Syllabus Point 2, *State ex rel. McGraw v. Scott Runyan Pontiac–Buick, Inc.,* 194 W.Va. 770, 461 S.E.2d 516 (1995). *Hill v. Stowers,* 224 W.Va. 51, 55, 680 S.E.2d 66, 70 (2009).

## III. Analysis

██ On appeal, Mr. Holt asserts that the circuit court erred in finding that his claims could not be brought under the WVCCPA because of the exclusion set forth in W. Va.Code § 46A–1–105(a)(3). W. Va.Code § 46A–1–105(a)(3) states, in pertinent part, "This chapter does not apply to ... [t]ransactions under public utility or common carrier tariffs if a subdivision or agency of this state or of the United States regulates the

charges for the services involved, the charges for delayed payment, and any discount allowed for early payment...." Although the circuit court did not explicitly state it, its decision necessarily implies that it determined that Mr. Holt's claims arise from transactions under a public utility tariff.

Mr. Holt argues four main points in this appeal: that W. Va.Code § 46A–1–105(a)(3) is ambiguous and must be construed in his favor; that the public utility exclusion in W. Va.Code § 46A–1–105(a)(3) does not bar his claim because the claim pertains to WVAW's unfair and deceptive course of conduct, not its rates; that claims under the WVCCPA against public utilities would not unduly interfere with the PSC's jurisdiction over utilities; and that the circuit court's application of the exclusion in W. Va.Code § 46A–1–105(a)(3) frustrates the WVCCPA's "gap-filling" function.

WVAW disagrees on all of Mr. Holt's points, arguing that W. Va.Code § 46A–1–105(a)(3) is not ambiguous, that it is not limited to "rates," that it is effective for all WVCCPA claims, and that it excludes Mr. Holt's claims. WVAW further contends that allowing claims such as Mr. Holt's claims to proceed in circuit court would unduly interfere with public utility regulation and that there is no "gap" to be filled by the WVCCPA. Finally, WVAW asserts that it was entitled to dismissal on alternative grounds: Mr. Holt failed to allege an "unfair or deceptive act or practice" within the meaning of W. Va.Code § 46A–6–102(7).

We begin our analysis by addressing Mr. Holt's argument that W. Va.Code § 46A–1–105(a)(3) is ambiguous. Specifically, Mr. Holt contends that the WVCCPA does not define "public utility tariffs" or what it means to "transact under" a tariff for consumer protection purposes and that it is therefore unclear as to whether the statute prevents consumers from challenging more than PSC-approved rates and charges. Mr. Holt as-

er be made by motion: ... (6) failure to state a claim upon which relief can be granted.... If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to

and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56....

**6.** The pertinent language of W. Va.Code § 46A–1–105 is quoted *infra* Part III.

serts that the statute is best read to only prevent consumers from challenging rates and charges under the WVCCPA. As noted above, WVAW disagrees with Mr. Holt and urges this Court not to find the language to be ambiguous. WVAW argues that claims that can be excluded under W. Va.Code § 46A–1–105(a)(3) may include more than PSC-approved rates and charges, and may include claims arising out of the imposition of those rates and charges.

We have long held that " ' "[a] statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect." Syl. Pt. 2, *State v. Epperly*, 135 W.Va. 877, 65 S.E.2d 488 (1951).' Syl. Pt. 1, *State v. Jarvis*, 199 W.Va. 635, 487 S.E.2d 293 (1997)." Syl. pt. 2, *Mace v. Mylan Pharm., Inc.*, 227 W.Va. 666, 714 S.E.2d 223 (2011). *See also* syl. pt. 2, *Crockett v. Andrews*, 153 W.Va. 714, 172 S.E.2d 384 (1970) ("Where the language of a statute is free from ambiguity, its plain meaning is to be accepted and applied without resort to interpretation."). "A statute is open to construction only where the language used requires interpretation because of ambiguity which renders it susceptible of two or more constructions or of such doubtful or obscure meaning that reasonable minds might be uncertain or disagree as to its meaning." *Hereford v. Meek*, 132 W.Va. 373, 386, 52 S.E.2d 740, 747 (1949). Additionally, we have said that "courts may not find ambiguity in statutory language which laymen are readily able to comprehend; nor is it permissible to create an obscurity or uncertainty in a statute by reading in an additional word or words." *Crockett*, 153 W.Va. at 718–19, 172 S.E.2d at 387.

We disagree with Mr. Holt's contention that the statutory language he questions is ambiguous. It plainly is not. The words used in the statute are commonly understood individually and when considered in conjunction with one another. *See, e.g.*, 64 Am. Jr.2d *Public Utilities* § 61 (2014) ("A 'tariff' is a public document setting forth services being offered; rates and charges with respect to those services; and governing rules, regulations, and practices relating to those services."); *In re Waikoloa Sanitary Sewer Co., Inc.*, 109 Hawai'i 263, 125 P.3d 484, 492 (2005) (same); *Adams v. N. Ill. Gas Co.*, 211 Ill.2d 32, 284 Ill.Dec. 302, 809 N.E.2d 1248, 1263 (2004) (same); *Danisco Ingredients USA, Inc. v. Kansas City Power & Light Co.*, 267 Kan. 760, 986 P.2d 377, 381 (1999) ("Tariffs are those terms and conditions which govern the relationship between a utility and its customers."); *In re Complaint of Reynoldsburg*, 134 Ohio St.3d 29, 979 N.E.2d 1229, 1238 (2012) ("Public utility tariffs are books or compilations of printed materials filed by public utilities with, and approved by, the commission that contain schedules of rates and charges, rules and regulations, and standards for service."); *Black's Law Dictionary* 1726 (10th ed.2014) ("[T]ransaction ... 1. The act or an instance of conducting business or other dealings; esp., the formation, performance, or discharge of a contract. 2. Something performed or carried out; a business agreement or exchange. 3. Any activity involving two or more persons." (Emphasis omitted)).

The term "public utility tariffs" is universally understood to mean more than just PSC-approved rates and charges. It also governs the rules, regulations, and practices relating to rate- and charge-based services between a utility and its consumers. We therefore find that the language of W. Va. Code § 46A–1–105(a)(3) is unambiguous and clearly expresses the Legislature's intent that the exclusion from suit set forth therein applies to more than simply the PSC-approved rates and charges themselves. Reading into the term "public utility tariffs" the restrictive meaning urged by Mr. Holt would require us to alter an unambiguous statute in a manner plainly not intended by the Legislature. We will therefore give full force and effect to W. Va.Code § 46A–1–105(a)(3). *See* syl. pt. 2, *Mace*, 227 W.Va. 666, 714 S.E.2d 223.

Having determined that W. Va.Code § 46A–1–105(a)(3) is not ambiguous, we now proceed to apply the statute to this case. First, we note that in this appeal, the parties do not dispute that WVAW is a public utility. Further, the parties do not dispute that WVAW is regulated by the PSC, which is a

state agency.[7] The PSC regulates water utilities, including WVAW, through implementation and application of Rules for Government of Water Utilities ("Water Rules"), W. Va.Code R. § 150–7–1 *et seq.* Through these rules, the PSC regulates, as described in W. Va.Code § 46A–1–150(a)(3), charges for services, charges for delayed payment, and any discount allowed for early payment. Thus, whether W. Va.Code § 46A–1–105(a)(3) applies to the claims in this case turns on whether Mr. Holt's claims arise from transactions under WVAW's tariff.

The PSC's Water Rules require that water utilities file tariffs with the PSC. W. Va.Code R. § 150–7–2.2.a. Tariffs must contain a schedule of all of a water utility's rates, charges, tolls, and all of the utility's rules and regulations. W. Va.Code R. § 150–2–2.1 (2002). WVAW's tariff, titled "Rates, Rules and Regulations for Furnishing Water at Cities, Towns, Communities, Etc." ("Tariff") was issued under the authority of the PSC. First and foremost, the Tariff provides the rates for water usage and states that "[b]ills and notices of the company will be mailed or delivered to the consumer's last address as shown by the records of the company." Further, "Service may be discontinued and/or disconnected … for non-payment of account when due," and that "the company [WVAW] will not be liable for any accident, breaks, or leakage arising in connection with the supply." Additionally, the Tariff includes provisions dealing with delayed payment penalties and reconnection charges following discontinuance of water service for non-payment of charges.

We conclude that Mr. Holt's claims all arise from transactions described in the Tariff. Accordingly, W. Va.Code § 46A–1–105(a)(3) applies to exclude Mr. Holt's WVCCPA claims. Therefore, the circuit court's order dismissing Mr. Holt's complaint was not in error, and we affirm that decision.[8]

## IV. Conclusion

For the reasons set forth above, this Court affirms the circuit court's order entered June 24, 2013, dismissing Mr. Holt's complaint against WVAW.

Affirmed.

Justice WORKMAN, Justice KETCHUM, and Justice LOUGHRY concur and reserve the right to file separate opinions.

Chief Justice DAVIS dissents and reserves the right to file a separate opinion.

LOUGHRY, Justice, with whom Justices WORKMAN and KETCHUM join, concurring:

While I agree with the result reached by the majority that the claims asserted by Mr. Holt are precluded by the West Virginia Consumer Credit and Protection Act,[1] I write separately to emphasize that Mr. Holt had other legal avenues of relief that he opted against pursuing. Instead of instituting a claim under this state's Consumer Credit and Protection Act, he could have filed a common law claim predicated on the same allegations of unfair and deceptive practices that he

---

7. W. Va.Code § 24–2–2 (1998) provides the statutory authorization for the PSC's regulation of public utilities:

> The commission is hereby given power to investigate all rates, methods and practices of public utilities subject to the provisions of this chapter; to require them to conform to the laws of this State and to all rules, regulations and orders of the commission not contrary to law; and to require copies of all reports, rates, classifications, schedules and timetables in effect and used by the public utility or other person, to be filed with the commission, and all other information desired by the commission relating to the investigation and requirements, including inventories of all property in such form and detail as the commission may prescribe.

(In part).

8. Having determined that the language of W. Va.Code § 46A–1–105(a)(3) is unambiguous and clearly expresses legislative intent, that Mr. Holt's claims arise from transactions under a public utility tariff, and having found that the circuit court correctly dismissed the case under the exclusion set forth in W. Va.Code § 46A–1–105(a)(3), we decline to address Mr. Holt's remaining points on appeal. Because we agree with WVAW that the action may not be maintained pursuant to W. Va.Code § 46A–1–105(a)(3), we also decline to address WVAW's argument that Mr. Holt did not present a valid claim pursuant to W. Va.Code § 46A–6–102(7).

1. *See* W.Va.Code § 46A–1–101 *et seq.* (2006).

relied upon as the basis for his statutory claim. The crux of Mr. Holt's allegations was that West Virginia–American Water Company, with information regarding the source of the water leak, continued to improperly bill him in excess of $5,000 for four straight months, and even went so far as to terminate his water supply for nonpayment of the disputed charges. The record in this case suggests that West Virginia–American Water Company was less than forthcoming with information regarding its discovery of the initial leak[2] as well as its repair of this leak. In addition, the record indicates that West Virginia–American Company failed to notify Mr. Holt regarding its corporate responsibility for the first large leak.

Rather than viewing West Virginia–American Water Company as lacking any responsibility for both the prolonged period of time necessary to resolve this matter and for Mr. Holt's exasperating experience in trying to identify and solve his water leak, what this Court has done is simply to recognize the lack of a viable claim based on clear legislative language. *See* W.Va.Code § 46A–1–105(a)(3) (2006) (barring claims involving transactions under public utility or common carrier tariffs where public agency regulates charges for services). This Court has not, however, precluded Mr. Holt from pursuing any viable non-statutory claims against West Virginia–American Water Company.

Based on the foregoing, I respectfully concur.

DAVIS, Chief Justice, dissenting:

Had Mr. Holt merely sought to challenge, through his lawsuit in the case *sub judice,* West Virginia–American Water Company's ("WVAW") rates or late charges on his regular monthly water bill that were not related to the series of water line leaks recounted in the majority's opinion, I would wholeheartedly agree with the majority's decision herein. However, in its zeal to quash Mr. Holt's complaint, the majority of the Court has failed to appreciate the true import of Mr. Holt's claims, which challenge not only WVAW's imposition of late charges upon water usage attributable to WVAW's own faulty

meter and efforts to collect the same, but also WVAW's termination of Mr. Holt's water service for his failure to pay such late charges in *direct contravention* of the order of the Public Service Commission of West Virginia ("PSC") specifically *prohibiting* WVAW from terminating Mr. Holt's water service during the pendency of the underlying proceedings as long as he continued to timely pay his customary monthly water bills. The parties do not dispute that, throughout the pendency of the PSC proceedings, Mr. Holt continued to pay his monthly water bills in an amount commensurate with his customary water usage prior to the occurrence of the various leaks in his water line. Through his lawsuit against WVAW in the case *sub judice,* Mr. Holt simply seeks recompense for the damages he incurred as a result of WVAW's blatant disregard for the PSC's order and its use of allegedly unfair trade practices in the handling of his account. Because the language of W. Va.Code § 46A–1–105(a)(3) specifically does *not* preclude Mr. Holt's cause of action against WVAW under the facts of this case, I adamantly dissent.

### A. The Majority Misapplied the Plain Language of W. Va.Code § 46A–1–105(a)(3)

To uphold its dismissal of Mr. Holt's lawsuit against WVAW, the majority determined that W. Va.Code § 46A–1–105(a)(3) (2000) (Repl. Vol. 2006) applies to preclude the claims he has asserted therein. However, an examination of the legislative intent underlying the West Virginia Consumer Credit and Protection Act and a consideration of how other courts have interpreted this statutory language reveal the flaws in the majority's interpretation and resultant application of this statute.

When this Court is faced with a matter of statutory construction, we routinely look to the intent of the Legislature in promulgating the provision at issue as an aid to understanding the meaning of the challenged language. *See generally* Syl. pt. 1, *Smith v. State Workmen's Comp. Comm'r,* 159 W.Va.

---

2. This leak was at the meter box.

108, 219 S.E.2d 361 (1975) ("The primary object in construing a statute is to ascertain and give effect to the intent of the Legislature."). With regard to the statutory provision interpreted by the majority in this case, W. Va.Code § 46A–1–105(a)(3) is part of the West Virginia Consumer Credit and Protection Act ("WVCCPA"). In enacting the WVCCPA, the Legislature specifically adopted W. Va.Code § 46A–6–101 (1974) (Repl. Vol. 2006), which is entitled "Legislative declarations; statutory construction" and directs, in full, as follows:

(1) The legislature hereby declares that the purpose of this article is to complement the body of federal law governing unfair competition and unfair, deceptive and fraudulent acts or practices in order to protect the public and foster fair and honest competition. *It is the intent of the legislature that, in construing this article, the courts be guided by the interpretation given by the federal courts to the various federal statutes dealing with the same or similar matters. To this end, this article shall be liberally construed so that its beneficial purposes may be served.*

(2) It is, however, the further intent of the legislature that this article shall not be construed to prohibit acts or practices which are reasonable in relation to the development and preservation of business or which are not injurious to the public interest, nor shall this article be construed to repeal by implication the provisions of articles eleven [§§ 47–11–1 et seq., repealed], eleven-a [§§ 47–11A–1 et seq.] and eleven-B [§§ 47–11B–1 et seq.], chapter forty-seven of this Code.

(Emphasis added). Thus, it is apparent from this express statement of legislative intent that (a) this Court has been instructed to look to similar federal statutes and court decisions for guidance in construing the provisions of the WVCCPA and (b) the statutes comprising the WVCCPA are to be "liberally construed so that its beneficial purposes may be served." W. Va.Code § 46A–6–101(1).

The statutory language at the center of the instant controversy is part of the Legislature's recognized exceptions to claims covered by the WVCCPA. W. Va.Code § 46A–1–105(a)(3) (2000) (Repl. Vol. 2006) provides as follows:

(a) This chapter does not apply to:

. . . .

(3) Transactions under public utility or common carrier tariffs if a subdivision or agency of this state or of the United States regulates the charges for the services involved, the charges for delayed payment, and any discount allowed for early payment[.]

Until the majority's opinion herein, this Court has never before interpreted this particular statutory provision. Thus, pursuant to W. Va.Code § 46A–6–101(1), the majority of "the [C]ourt[ ] [should have] be[en] guided by the interpretation given by the federal courts to the various federal statutes dealing with the same or similar matters."[1] Had the majority heeded this express statement of legislative intention, it would have appreciated that the construction it has afforded to W. Va.Code § 46A–1–105(a)(3) is contrary to the interpretation of similar federal language and does not effectuate the Legislature's desire that the provisions of the WVCCPA "be liberally construed so that its beneficial purposes may be served." W. Va.Code § 46A–6–101(1).

Using virtually identical language, Congress has enacted 15 U.S.C.A. § 1603(4) (2010), which operates to exclude from the federal Truth in Lending Act substantially similar matters as those addressed in the exclusions to the WVCCPA set forth in W. Va.Code § 46A–1–105(a)(3). The language of 15 U.S.C.A. § 1603(4) provides:

This subchapter [of the federal Truth in Lending Act] does not apply to the following:

. . . .

---

1. Looking to the courts of other jurisdictions for guidance when resolving questions of law is an approach often employed by this Court. *See, e.g., Kenney v. Liston,* 233 W. Va. 620, 760 S.E.2d 434, 2014 WL 2565563 (No. 13–0427 June 4,

2014); *State ex rel. Thompson v. Pomponio,* 233 W.Va. 212, 757 S.E.2d 636 (2014); *Dean v. State,* 230 W.Va. 40, 736 S.E.2d 40 (2012); *Motto v. CSX Transp., Inc.,* 220 W.Va. 412, 647 S.E.2d 848 (2007).

(4) Transactions under public utility tariffs, if the Bureau determines that a State regulatory body regulates the charges for the public utility services involved, the charges for delayed payment, and any discount allowed for early payment.[2] (Footnote added). While several federal courts have applied this statute in cases concerning allegedly excessive or erroneous charges, none of these tribunals have considered, *or applied,* it in the context of claims such as those asserted by Mr. Holt claiming that a public utility, *i.e.,* WVAW, has violated a direct order of its regulatory body, *i.e.,* the PSC. *See Aronson v. Peoples Natural Gas Co.,* 180 F.3d 558 (3d Cir. 1999) (applying 15 U.S.C.A. § 1603(4) to bar public utility customer's claims challenging natural gas company's billing methods whereby calculation of late payment charge and interest assessed thereon were not clear from customer's monthly natural gas bill); *Aronson v. Peoples Natural Gas Co.,* 180 F.3d 558 (3d Cir.1999) (same); *Gattermann v. Rhodes,* 898 F.2d 145 (4th Cir.1990) (per curiam) (unpublished op.) (applying 15 U.S.C.A. § 1603(4) to dismiss public utility customer's complaint challenging termination of her utility service while parties were determining whether customer owed monies on previous account with same public utility); *Monchino v. PSE & G, Co.,* No. 11–1733 ES, 2012 WL 1988619 (D.N.J. June 4, 2012) (applying 15 U.S.C.A. § 1603(4) to dismiss complaint alleging public utility failed to remove charges erroneously billed to customer's account); *Huegel v. City of Easton,* No. 00–CV–5077, 2003 WL 22428435 (E.D.Pa. May 13, 2003) (applying 15 U.S.C.A. § 1603(4) to grant city's motion for summary judgment on public utility customers' complaint claiming city had failed to inform delinquent account holders of amount of interest and other charges due under repayment plans); *King v. Town of Waynesville,* No. 1:02CV55, 2003 WL 23354657 (W.D.N.C. Apr. 14, 2003) (applying 15 U.S.C.A. § 1603(4) to grant city's motion for summary judgment as to public utility customer's complaint that city had charged late fees without disclosing the same and had failed to properly credit customer's account); *Munson v. Orrin E. Thompson Homes, Inc.,* 395 F.Supp. 152 (D.Minn.1974) (applying 15 U.S.C.A. § 1603(4) to grant public utility's motion for summary judgment regarding public

2. In addition to the federal government, several other states have adopted exclusionary language similar to that contained in W. Va.Code § 46A–1–105(a)(3). *See* Colo.Rev.Stat. Ann. § 5–1–202(1)(c) (West 2012) ("This code does not apply to: ... (c) Transactions under public utility or common carrier tariffs if a subdivision or agency of this state or of the United States regulates the charges for the services involved, the charges for delayed payment, and any discount allowed for early payment[.]"); Ind.Code Ann. § 24–4.5–1–202(b)(3) (West 2012) ("This article does not apply to the following: ... (3) Transactions under public utility, municipal utility, or common carrier tariffs, if a subdivision or agency of this state or of the United States regulates the charges for the services involved, the charges for delayed payment, and any discount allowed for early payment."); Kan. Stat. Ann. § 16a–1–202(3) (West 1973) ("K.S.A. 16a–1–101 through 16a–6–414 do not apply to ... (3) transactions under public utility or common carrier tariffs if a subdivision or agency of this state or of the United States regulates the charges for the services involved, the charges for delayed payment, and any discount allowed for early payment[.]"); La.Rev.Stat. Ann. § 9:3512(3) (2006) ("This law does not apply to: ... (3) Transactions under public utility or common carrier tariffs if a subdivision or agency of this state or of the United States regulates, approves, or consents to the charges for the services involved, the charges for delayed payment, and any discount allowed for early payment."); Okla. Stat. Ann. tit. 14A, § 1–202(3) (West 1982) ("This act does not apply to ... (3) transactions under public utility or common carrier tariffs if a subdivision or agency of this state or of the United States regulates the charges for the services involved, the charges for delayed payment and any discount allowed for early payment[.]"); S.C.Code Ann. § 37–1–202(3) (2005) ("Except as otherwise provided, this title does not apply to: ... (3) Transactions under public utility, municipal utility or common carrier tariffs if a subdivision or agency of this State or of the United States regulates the charges for the services involved, the charges for delayed payment, and any discount allowed for early payment [.]"); Wis. Stat. Ann. § 421.202(3) (West 2007) ("Chapters 421 to 427 do not apply to any of the following: ... (3) Charges for delayed payment and any discount allowed for early payment in transactions under public utility or common carrier tariffs if a subdivision or agency of this state or of the United States regulates such charges or discounts, or if such charges or discounts are made in connection with the furnishing of electric service by an electric cooperative organized and operating on a nonprofit basis under ch. 185.").

utility customers' claims challenging surcharges added to customers' monthly utility bills for construction of underground utility distribution system).[3] *Cf. Pollice v. National Tax Funding, L.P.*, 225 F.3d 379 (3d Cir.2000) (refusing to apply 15 U.S.C.A. § 1603(4) to bar claims against assignee of city's and public utilities' claims attempting to collect upon delinquent public utility customers' accounts). Rather, all of the federal cases addressing a public utility customer's claims against a public utility, and finding them to be excluded by 15 U.S.C.A. § 1603(4), have involved complaints about the imposition of late charges, the excessiveness of rates, or other routine billing practices. Simply stated, *no* federal cases have considered a public utility's callous disregard of an order issued by its governing body.

The majority's opinion focuses solely upon the fact that WVAW has filed a tariff with the PSC, which contains a listing of the utility's rates, charges, and general rules and regulations, and then concludes that all of Mr. Holt's claims arise from transactions related to said tariff. I do not dispute that had Mr. Holt's complaint focused solely on WVAW's routine billing practices and imposition of late fees for nonpayment of his customary water bill in the absence of the leak scenario involved in this case, such claims likely would be precluded by W. Va.Code § 46A–1–105(a)(3). However, those are not allegations set forth in Mr. Holt's complaint. Rather, Mr. Holt seeks redress for WVAW's flagrant violation of the PSC's order that specifically *prohibited* WVAW from terminating his water service during the pendency of

the underlying proceedings. Such allegations are wholly unrelated to a public utility's rates, charges, tariffs, or routine billing practices and are fully suggestive of a public utility's pattern of unlawful conduct.

Shortly after Mr. Holt filed his administrative complaint with the PSC, the PSC issued a temporary order on April 19, 2010, specifically ordering, in pertinent part, as follows:

> IT IS, THEREFORE, ORDERED that, while this case is pending final resolution, West Virginia–American Water Company not terminate public utility water service to the Complainant, Roger F. Holt, and to continue to provide water service to the Complainant, provided that the Complainant pays each of his bills for current public water utility service on or before the due dates stated on each billing.

Despite such directives prohibiting WVAW from turning off Mr. Holt's water service if Mr. Holt continued to make timely payments of his customary monthly water charges, and Mr. Holt's timely monthly payments during this period, WVAW nevertheless terminated Mr. Holt's water service in October 2010. In his circuit court complaint alleging violations of the WVCCPA, Mr. Holt recounted WVAW's actions in this regard:

> [West Virginia-]American Water engaged in the following unfair or deceptive acts or practices against the plaintiff [Mr. Holt]:
>
> . . . .
>
> Threatening to terminate Plaintiff's [Mr. Holt's] water service in violation of the PSC's April 19, 2010 Order Granting Inter-

**3.** Neither have other states who have interpreted their statutory exclusionary language considered claims such as those raised by Mr. Holt in the instant proceeding wherein he seeks damages for a public utility's direct violation of an order issued by its regulatory agency. *See, e.g., Jones v. Kansas Gas & Elec. Co.*, 222 Kan. 390, 565 P.2d 597 (1977) (determining public utility exclusion applied to claims regarding late payment charges imposed upon public utility bill); *State of Louisiana ex rel. Guste v. Council of City of New Orleans*, 9 P.U.R.4th 353, 309 So.2d 290 (La.1975) (concluding that public utility's adoption and imposition of late payment provisions which increased customers' monthly bills were exempted from regulation under Louisiana's consumer protection laws); *Grein v. Hawkins*, 295 So.2d 219

(La.Ct.App.1974) (finding public utility exemption of Louisiana Consumer Credit Protection Act applied so as to bar customer's challenge to sanitary corporation's 60% monthly rate increase where sanitary corporation had been placed under Public Service Commission's control and PSC's operation of said sanitary corporation provided *prima facie* evidence of regulation of its charges by a state regulatory body); *Dalton v. City of Tulsa*, 1977 OK 25, 560 P.2d 955 (1977) (ruling that public utility customers could not maintain cause of action against city providing such services under either Oklahoma Consumer Credit Act or federal Consumer Protection Act because city utility board had authority to establish rates for city water services, and city board of commissioners had approved 5% late penalty).

im Relief via letters dated October 4, 2010 and October 15, 2010, with each letter constituting a discrete violation.

Terminating Plaintiff's [Mr. Holt's] water service in violation of the PSC's April 19, 2010 Order Granting Interim Relief. Thus, it is evident that these claims asserted by Mr. Holt do not concern tariffs, rates, or charges within the contemplation of W. Va. Code § 46A–1–105(a)(3). Rather, Mr. Holt seeks to hold WVAW accountable for its flagrant violation of an express order issued by WVAW's own regulatory agency—the PSC. As such, W. Va.Code § 46A–1–105(a)(3) should be "liberally construed so that its beneficial purposes may be served," W. Va. Code § 46A–6–101(1), and not applied to bar Mr. Holt's claims.

I do not mean to imply, however, that damages incurred as the result of any violation of a court's order routinely may be pursued under the WVCCPA. Rather, I simply wish to point out that Mr. Holt's allegations regarding WVAW's violation of the PSC's order are *not* the type of "[t]ransactions under public utility ... tariffs" contemplated by the exclusionary language of W. Va.Code § 46A–1–105(a)(3). As such, Mr. Holt pled claims sufficient to survive WVAW's motion to dismiss for failure to state a claim upon which relief may be granted. *See generally John W. Lodge Distrib. Co., Inc. v. Texaco, Inc.*, 161 W.Va. 603, 606, 245 S.E.2d 157, 159 (1978) ("In view of the liberal policy of the rules of pleading with regard to the construction of plaintiff's complaint, and in view of the policy of the rules favoring the determination of actions on the merits, the motion to dismiss for failure to state a claim should be viewed with disfavor and rarely granted. The standard which plaintiff must meet to overcome a Rule 12(b)(6) motion is a liberal standard, and few complaints fail to meet it."). Because the majority has reached a contrary conclusion in its decision of this case, I respectfully dissent.